IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| CHRISTOPHER C. ROBBINS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 07-6202-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

     Kathryn Tassinari
     Drew L. Johnson
     1700 Valley River Drive, First Floor
     Eugene, Oregon  97401

          Attorneys for Plaintiff

     Karin J. Immergut
     United States Attorney
     District of Oregon
     Britannia I. Hobbs
     Assistant United States Attorney
     1000 S. W. Third Avenue, Suite 600
     Portland, Oregon  97204-2902

Daphne Banay
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant


KING, Judge:

Plaintiff Christopher Robbins brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I affirm the decision of the Commissioner.

## BACKGROUND

Plaintiff filed an application for SSI and DIB on April 25, 2005, alleging disability beginning November 1, 2003.  The application was denied initially and upon reconsideration. After a timely request for a hearing, plaintiff, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on January 4, 2007.

On April 17, 2007, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the

burden of proof on the first four steps.  <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953 (9th Cir.

2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the

claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity,

disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines

whether the claimant has a medically severe impairment or combination of impairments.  A

severe impairment is one "which significantly limits [the claimant's] physical or mental ability to

do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not

have a severe impairment or combination of impairments, disability benefits are denied.

Page 3 - OPINION AND ORDER

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ concluded that plaintiff had not engaged in substantial gainful activity ("SGA") after May 2004, but had engaged in SGA after November 2003. She found plaintiff suffered from the severe impairments of chronic low back pain with left L4 nerve root impingement secondary to degenerative osteoarthritis of the lumbar spine, left hand pain residual to October 11, 2002 laceration, and recurrent herpes simplex. The ALJ concluded that plaintiff's COPD, right hip pain, obesity, and neck pain secondary to mild degenerative disc disease were not severe impairments. The ALJ found that these impairments did not meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.

The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light exertional work. He could lift 20 pounds occasionally, 10 pounds frequently, and could stand/walk for six hours and sit for six hours in an eight-hour day. Plaintiff needed to be able to sit or stand at will. Plaintiff could occasionally reach overhead, grasp with the non-dominant left hand, bend, crawl and crouch. The ALJ concluded plaintiff could perform his past relevant work as a Fundraiser II.

## FACTS

Plaintiff was 54 years old at the time of the hearing, with some community college. He had worked as a handyman, landscaper, stagehand, and fundraising supervisor. Plaintiff's employer reported that plaintiff last worked as a fundraiser in May 2004, but plaintiff reported he

Page 5 - OPINION AND ORDER

last worked for the employer in October 2004.  Plaintiff also reported he worked from April 2004 through October 2004 as a temporary on-call caregiver one day a week.

Plaintiff has suffered from repeated back injuries, with the most recent work-related injury occurring in May of 2002.  Lumbar spine x-rays in 2005 showed multi-level spondylosis, loss of height in the anterior aspect of the vertebral body, loss of intervertebral disc height at the L1-2 level, and sclerotic changes consistent with facet arthropathy at the L3, L4 and L5 levels.  A cervical x-ray in 2006 revealed early degenerative disc disease at C3-4 and C4-5.  A lumbar spine MRI in 2006 showed disc degeneration at multiple levels, and a focal annular tear lateral left at L4-5 with a lateral foraminal disc protrusion resulting in foraminal compromise and effacement of the exiting left L4 nerve root.  Plaintiff walked with a limp, carried a walking stick for ambulation and later a walker for weakness in his legs, although neither was prescribed, and took Vicodin or Oxycodone for pain.

Plaintiff cut his hand in December of 2002 requiring surgical repair of his digital nerve, which was 75% lacerated.  Feeling returned to the finger, although it was a "bit jumbled" and he experienced paresthesias and dysesthesias over the palm scar when playing the guitar, strenuously handling materials, holding a chisel, or riding a motorcycle.

Plaintiff also suffers from mild COPD, and a recurrent rash on his buttocks that has been diagnosed as herpes simplex virus.

Dr. Miriam E. Gage opined in September of 2006 that plaintiff suffered from degenerative disk disease at multiple levels, with disk protrusion and foraminal compromise at the left L4 nerve root.  She wrote,

> Due to Christopher's chronic low back pain, and groin and hip pain, he has been
> somewhat disabled.  I do not believe that he would be able to work full-time in

any capacity since it is difficult for him to stay in one position for an extended
period of time.  He would be doubtlessly prone to missing employment as well
due to flares of his low back pain.

Tr. 299.

Plaintiff testified that he is unable to stand on his feet, his left leg becomes numb when he
stands or sits, he has stiffening and spasms in his right leg, and pain in his right foot.  He testified
that the walker is not prescribed, but he uses it because his right leg is weak and his left leg goes
numb.  He testified he has 3 or 4 bad days a week.  He has to lie down every 30 to 45 minutes to
relax the right leg and regain sensation in the left leg.  He also testified that even on a good day
he must lie down from 15 to 45 minutes and stretch, every couple of hours.

He testified about neck pain, and problems with his eyes, left hand, and COPD.

Finally, he testified that his current medications caused dizziness, dry mouth,
disorientation, and occasional memory loss.

## DISCUSSION

I.    Plaintiff's Testimony

Plaintiff asserts that the ALJ erred in rejecting his testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the
ALJ must perform a two-stage analysis.  In the first stage, the claimant must (1) produce
objective medical evidence of one or more impairments; and (2) show that the impairment or
combination of impairments could reasonably be expected to produce some degree of symptom.
Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  The claimant is not required to
produce objective medical evidence of the symptom itself, the severity of the symptom, or the
causal relationship between the medically determinable impairment and the symptom.  The

claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

The ALJ found plaintiff's testimony about his limitations not entirely credible for a number of reasons. Although plaintiff stated he could not stand or walk for long periods, plaintiff reported that he could walk four blocks or one and a half hours in conjunction with describing his COPD symptoms to his physician. The ALJ properly questioned how plaintiff knows he can walk that far before he experiences COPD symptoms if is not able to walk. Plaintiff reported inconsistent reasons for leaving the fundraiser job–he told his hand surgeon he quit because of the pain in his hand from picking up packages, and in his disability application he stated he left due to the gasoline splashed on the office by vandals causing him respiratory difficulties, yet he told the ALJ he left because the job required too much standing and walking. There is some question about plaintiff's honesty regarding his drug use; in August 2005 he told one doctor he stopped using drugs in 1990 and another doctor that he had been "clean from drugs since 1998," but he tested positive for marijuana in 2006.

After reviewing his activities, the ALJ also questioned plaintiff's allegations of pain and need to lie down. Plaintiff reported in 2005 that his exercise was "mild dancing." Tr. 20, 272. Plaintiff played guitar, as reported by his son, even though he claimed to experience hand pain

using his left hand.  Furthermore, he helped on a drywall project in October 2004, and still rode

his motorcycle in February 2005.  Although the drywall project "didn't work out," the record is

not clear that it did not work out because of plaintiff's pain. Tr. 177.

The ALJ also pointed out that plaintiff has not followed his physician's advice and had

not exercised and lost weight.  His hand surgeon noted plaintiff's symptom amplification and

overlay in discussing his hand pain.  Tr 21.

Plaintiff's inconsistent statements, failure to follow a prescribed course of treatment, his

daily activities, and his tendency to exaggerate as noted by his hand surgeon are clear and

convincing reasons supporting the ALJ's conclusion that plaintiff's testimony was not entirely

credible.

Plaintiff properly points out the evidence does not support the ALJ's assertion that

positive straight leg raising discrepancies between seated and supine positions suggest "a

volitional component[.]"  Tr. 20.  No physician ever made such a suggestion.  Plaintiff also

properly notes that his seeking unemployment compensation when he left the fundraiser job does

not reflect on his credibility.  A person may receive unemployment benefits by looking for part-

time work while retaining eligibility for social security benefits.  OAR 471-030-0036(2)(b) (a

person who is unable to work full time is eligible so long as he is available for some work).

Nevertheless, the fact that the ALJ improperly considered some reasons for finding

plaintiff's credibility undermined does not mean that the ALJ's entire credibility assessment is

improper.  Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2003).

On the whole, the ALJ properly concluded that plaintiff's testimony about his limitations

was not entirely credible.

II.    <u>Medical Opinions</u>

Plaintiff challenges the ALJ's conclusion that Dr. Gage's opinion is not entitled to great weight. Dr. Gage opined that plaintiff is "somewhat disabled" due to low back, groin and hip pain. Tr. 299. She stated that plaintiff would be unable to work full-time because he has difficulty staying "in one position for an extended period of time," and he "would be doubtlessly prone to missing employment" due to "flares of his low back pain." <u>Id.</u> Dr. Gage mentioned the MRI which showed "degenerative disk disease, . . . which does reflect some of the places where he is having pain and numbness." <u>Id.</u>

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. <u>Id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. <u>Lester</u>, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. <u>Id.</u> at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. <u>Morgan v. Commissioner of Social Security Administration</u>, 169 F.3d 595, 600 (9th Cir. 1999).

As a threshold matter, the ALJ's sit/stand at will option is consistent with Dr. Gage's opinion about plaintiff's functional limitations.

The ALJ was correct to reject Dr. Gage's opinion that plaintiff would be "doubtlessly prone to missing employment" since it was not a specific functional limitation, relied on plaintiff's subjective reporting, and was inconsistent with her statement that plaintiff was only "somewhat disabled."  A physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted."  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 602 (9th Cir. 1999) (internal quotation omitted); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An ALJ is not required to accept the opinion of a physician, even a treating physician, if the opinion is "brief, conclusory, and inadequately supported by clinical findings."  Batson v. Barnhart, 359 F.3d 1190, 1195 (9th Cir. 2003).  It is true, as plaintiff points out, that the MRI showed degenerative disk disease, but Dr. Gage does not explain why this diagnosis would necessarily result in plaintiff missing work.  Furthermore, Dr. Gage does not offer an opinion as to how much work plaintiff would miss based on her observations of his symptoms.  The ALJ properly noted that Dr. Gage did not provide specific functional limitations based on any examination she performed.

The ALJ gave clear and convincing reasons for rejecting the opinion of Dr. Gage that are supported by substantial evidence in the record.

III.   SGA

Finally, plaintiff testified that his past employer accommodated his need to lie down and put his feet up for 15 to 20 minutes as needed, and call in absent at the last minute.  Plaintiff claims he has rebutted the presumption that this work constituted SGA,

Since I affirm the ALJ's finding that plaintiff is not disabled, I need not reach this issue.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this _____5th_____ day of November, 2008.


                                        _/s/ Garr M. King_____
                                        Garr M. King
                                        United States District Judge